Case number 171799 United States of America v. Tyrone Dexter Christian Arguments not to exceed 20 minutes per side. Ms. Jewell for the appellant. Good afternoon, your honors. May it please the court. Your honors, I'd like to request five minutes from my argument time for rebuttal. That's fine, and you may proceed. Thank you. May it please the court, there was no probable cause to search Mr. Christian's home in this case. Furthermore, the Leon good faith exception does not apply. This affidavit, if you would look at this affidavit, any well-trained police officer would look at this affidavit and fail to see probable cause. Because I don't have that much time here, your honors, I would like to focus my comments on the Leon good faith exception. We're dealing with two standards here, the probable cause standard, which requires a substantial basis. We're looking for a nexus between the home and the criminal activity. For Leon, the standard is less protective, so we are looking for a minimal nexus. Because the Leon standard applies here, it necessarily follows that there is an absence of probable cause. So I'll be focusing my remarks on the Leon good faith exception. Now, your honors, there are three black letter concepts that all police officers should be familiar with that are the connection. A connection between the home and the criminal activity. And here we have an affidavit that is focused on the dealings of a third party who has no possessory interest in the home. Can we look beyond the four corners of the affidavit? Well, your honors, for Leon, you are permitted to look beyond the four corners of the affidavit because we're looking at overall good faith. For probable cause, it is limited to the four corners. And you're talking about Leon, correct? I am talking about Leon. I should have qualified my question. I apologize. So if we do, can we look at what Officer Holt said about the interactions at the residence? Yes, your honor. For Leon good faith, we can look at what Officer Holt saw. He did apparently see Mr. Thomas leaving the home or entering the home. We also know that there were police observations of Mr. Thomas going to three other locations besides 618 Granville, including a Save-A-Lot, a CVS, a Walgreens. That information did not go into this affidavit. It's fairly perplexing as to why if the police officer saw Mr. Thomas in the home, that did not go in the affidavit. That seems unreasonable. He said he wasn't at the home and it says contrary to the observations of the officers. I agree, a perfect affidavit would have included the information you just stated. But it does say contrary to the observations of the officers, correct? That is true, your honor. It does say contrary to observations. Still, any reasonable police officer working with this concept of a nexus would put language in that puts Thomas inside the home. Why does it matter? If you concede under Leon we're allowed to look outside the affidavit, then can't we use what actually Officer Holt testified at trial to clarify any ambiguities in the affidavit? There seems to be a dispute what in the area meant and when you combine that with a later point, why don't we just look to what Holt said happened, which clearly shows that he was at the house for many hours. Yes, your honor. Even if we accept that he was at the house, our position is that is still not a nexus because he still has no possessory interest in the home. And this case would be outside of this court's previous cases. I'm sorry to interrupt you. If someone goes in, let's just assume this happens. Someone goes in, comes out, gets stopped, has drugs on them. Yes, your honor. It doesn't matter if they have a possessory interest. If the information they got was Mr. Christian's dealing drugs and he's doing so from the home and it's corroborated by someone going in, coming out, getting arrested, having drugs. Yes, your honor. But that assumes that all of the information is timely and that it's specific and factual and corroborated. I'm sorry again to interrupt you, but all this information was in the affidavit. It says, tell me if I'm wrong, not that it matters for Leon, but in the last four or five months, multiple people told law enforcement he was buying from there. He's a known history of drug dealing and a person leaving the residence had drugs on them. I would disagree with that construction of the affidavit. So the informational item about the last four or five months, we do not know who said that. It's not even a confidential informant. It's debriefs of subjects. So the problem with that is reliability. There's also a timely problem with that. I understand that, but for Leon, we can put all those factors, the facts together and then say, in good faith, could they rely upon this, correct? And you're saying that's stale and not great, but it was all included in an affidavit a magistrate signed. Yes, your honor. Where were the drugs that were found? Were they found in the vehicle of Thomas or on the body of Thomas? They were found in the backseat of the vehicle of Thomas, not on his person. So there's no connection. The facts in this affidavit, the informational items are old. So we have a staleness issue. They're also not particularized. So even under Leon's permissive standard, you're still looking for particularized facts, not bare conclusions, not suspicions, not hunches. It is a modicum, but a modicum means something that is measurable. And because we're dealing with a constitutional standard, we still need those particularized facts. So the eight-month-old first item after Mr. Christian's criminal history is what I would call meta-information. It's information about information, but it doesn't give anything specific about Mr. Christian dealing drugs in his home in anything more than a casual drug dealer. So one month later, there is the most specific thing in the affidavit that deals with Mr. Christian, which is the drug buy. But we don't know how much drugs were purchased. We do not know what kind of drugs. Aren't you doing the divide and conquer the Supreme Court said we don't take the facts, attack each one, and then put them together. We look at the totality of the facts. Yes, Your Honor. I don't think that what we're doing and what the panel majority did last summer was a divide and conquer. I think they looked at each ingredient in the mix first and then stepped back and looked at what does the mix say all together. Divide and conquer, which is what the district court did or the appellate court did in Wesby, there were myriad facts that were not considered. The circuit court looked at only three things to determine whether or not the arrestees had the permission to be the party. They did not consider the drugs at the party, the strippers. I'm sorry, Your Honors, this was a very colorful case. And they really only considered three things. That is a classic divide and conquer approach where you're dividing up the information and you're not looking at whether it speaks to each other. The panel majority last summer did consider the most concrete thing in the affidavit, the drug buy. They considered does that, if we look at that with the information from eight months ago, does that add any additional value? If we look at the drug buy in connection with the informational conclusory statement that he's a large-scale drug dealer, does that add anything? It's not divide and conquer. It is just doing the math and the math just doesn't add up to probable cause or lie on good faith. The timely problem. So it's a black letter concept that affidavits need to have information that is timely. The affidavit was submitted on September 3rd. And the information in this affidavit goes back. We start with Mr. Christian's criminal history. Then we have something from eight months ago, which is kind of a general, here's some information on different drug traffickers in town, but nothing specific. Then we have this seven specific thing in the affidavit. And then... Can I ask you, Counselor, would there have been probable cause to search the home at the time of that drug buy? There may have been probable cause to search the home at the time of that drug buy. That would make this case similar to the white case where there was a drug buy conducted in the driveway of the defendant. And then that was the problem. The officers didn't do it then, but then they waited a little longer. And I think you're there were reports of significant drug activity at that home. It was about three months after that drug buy, three or four months after. Would there have been probable cause to search the home at that time? No, Your Honor, because we went from a specific fact to then a very general conclusory statement. I mean, the timeline of investigation that you see in almost all the cases is that you've got a general tip, and then you've got something specific to corroborate that tip. What I'm struggling with is if officers have some evidence and you can see that potentially they could have executed a warrant in January, they wait a few months and get really what's more evidence that in some ways confirms what they found before, that somehow now this whole investigation has become stale. And then if they wait three or four months more and they find an to find more evidence rather than less, they seem to face this problem of losing the good evidence. And I think that's that I'm sort of struggling with that point in terms of what law enforcement is supposed to do when they want to maybe confirm suspicions that they have without executing a search warrant. Yes, Your Honor. I think the problem in this case is that Mr. Christian was on the radar, but he was not the target of the investigation that day on September 3rd, and this is borne out in the record. It was Mr. Thomas who was the target. The police were surveilling Mr. Thomas, trying to figure out if he was engaging in drug trafficking. When they saw him in the area of Mr. Christian's home, then they looked back and they saw all the information on the radar about Mr. Christian, but they did not, you know, it was not an investigation of Mr. Christian. But counsel, now it sounds like you're suggesting that warrants are issued to search persons rather than places, and we know that the Supreme Court has told us the warrants are to search places, so I'm not quite sure why it matters whether Christian was on the radar or Thomas was on the radar. It's this address that we're really worried about. Yes, Your Honor, but the nexus requirement generally requires some connection to the place to be searched, so Christian and Christian's activity would connect back to his home. You know, if you are engaging in drug trafficking, it can be assumed that you're doing that out of your home, but the affidavit doesn't contain facts about that at the time on September 3rd, about Christian. So the officers, in the span of nine months before they get the affidavit, have the following information that Judge Riedler just went through. They have statement he's dealing drugs in December 2014, followed by a buy by an informant, him dealing drugs to the informant itself from his residence, followed by several corroborating statements saying he's dealing drugs from the residence, followed by Thomas leaving the residence and being found with drugs, correct? All that evidence is accurate? That is all somewhat accurate, but I wouldn't call it evidence, Your Honors. Okay, this is the information, I'm sorry. The information. Good point. They have all this information, and you're saying in good faith they can't rely on all that to get a search warrant? Yes, Your Honor, because each piece of information is bare, conclusory, stale, outdated. Wait, how is the buy bare, conclusory, or any of that? Well, the buy is the most specific item in the affidavit. We don't even know what was sold. And I'm sorry to interrupt you, but it corroborates the other statements, as does, in part, not as well as the buy, Thomas leaving and being found with drugs. This is a it's just probable. And is it probable at that point to an officer who's gotten a warrant and now we're talking about Leon, relying in good faith? No, Your Honor, I say that there's no good faith here because corroboration, usually it is you are following up a general thing with a specific thing. So you can't have something in the past corroborate a conclusory statement in the future. That's not how police work works. This is a case where the police officers should have known we need to do more work on Mr. Christian and his home. You know, we found these drugs 12 miles away in Mr. Thomas's car. We need to we need to do more work on Mr. Christian and his home to get into that home. I just want to confirm that the officer is a part of that recitation and the affidavit say that he, the officer or officers working in concert with him, observed Mr. Thomas leave the home? Because I know there is some language about in the area. But was there was there a statement that they observed Mr. Thomas leave the home and then found drugs, even though it was some distance away? No, Your Honor, they do not mention. May I finish my question? It's my time is up. Um, they don't mention that they saw Mr. Thomas inside the home. That is not in the they did not say they said they saw him exit the area of 618 Grandview Avenue. May I ask a question, sir? Did Officer Holt testify that they saw him leave the home, right? So not in the affidavit, but beyond when you're doing Leon. Yes. Yes. So they saw him leave the home. He was in the home for an hour and a half. I still think it's unreasonable that they would not put that in the affidavit if that is indeed what they saw. Thank you, Your Honor. Thank you, Ms. Jewell. You'll have your rebuttal time. May it please the court. Jennifer McManus on behalf of the United States. I'd like to maybe pick up where the questioning left off about whether information that is not included in the forecorner of the affidavit can be considered for purposes of the Leon Good Faith analysis. My read of the case law is that until now, the Sixth Circuit in Lawton held that, in fact, information known to the police officers, but not included in the affidavit, could not be considered as part of the Leon Good Faith analysis. But that, and then later in Frazier, the court maybe qualified that rule and said, well, of course, however, information that is known to the police officers that is, in fact, conveyed to the magistrate, that can be considered, but not information that is... Doesn't Leon say, though, all the circumstances can be considered? And hasn't, as the Frazier court pointed out, hasn't the Supreme Court subsequently said after Leon that all the circumstances, and haven't three circuits, sorry, to add to this, said, and Judge Motz went through this in her Fourth Circuit opinion, that you can look at all the circumstances, and so isn't Lawton contrary to both the Supreme Court and the large weight of the circuits? Yes, and that's what I was getting to. Thank you. That, in fact, there is currently a circuit split on that issue. At least three circuits, as I read it, the Fourth, the Eighth, and the Eleventh, have held that all the circumstances should be considered. It's still an objective inquiry. We don't try to get into the minds of the police officers to see what they were really thinking, but it's an objective inquiry that takes into account all the circumstances. Because, of course, there is a footnote in Leon itself that talks about how all of the circumstances should be considered, such as, for example, if officers went to a different magistrate before presenting the information to the issuing magistrate. And that footnote says, in making this determination, all of the circumstances, and then including what you just said, correct? Correct. So, although there is a divide among the circuits, I think the Ninth, maybe the Seventh, there's cases maybe both ways, the Seventh, the Sixth, and the Tenth, on one side, we think the correct rule is the one that has been adopted by the Fourth, Eighth, and Eleventh circuits, and would encourage the court to adopt it here. Is there an objective reason why that fact wouldn't have been included in the affidavit? Why the affidavit would have been written the way it was? There are certainly reasons why, it's not in the record, but there are certainly reasonable reasons why that information was not included in the affidavit. Would it have been helpful? Yes. I suspect we would not even be here if that information had been included in the affidavit. But the reality is, as the Supreme Court has recognized as far back as in Ventresca, officers are working in the midst and haste of an investigation. And that is definitely true here, where Thomas has stopped at six o'clock and they want to get into that house before there is time for the evidence to disappear. They're in the house, have obtained the search warrant by just after midnight, they're acting quickly. And importantly, the affiant here was not one of the surveillance officers. And so as they're working quickly and communications are being had, Agent Holt is actually with Reuben Thomas at the scene of the stop while Detective Bush is trying to get the search warrant affidavit. And I think, and I know that Detective Bush was maybe not 100% certain whether the surveillance officers had seen Reuben Thomas inside the house at the time that he was applying for the search warrant affidavit. Taking that point, if you're looking at the affidavit and what you've got is that Mr. Thomas was seen in the area of that address, you know, without the later testimony of the observation of him going in the house, do you agree that the probable cause for the warrant would be questionable or debatable? Yeah, Judge Donald, I don't actually agree with that. I think frankly, with even without the Reuben Thomas information that this affidavit established probable cause, but definitely it helps. And I do acknowledge though that it would be less helpful in the probable cause inquiry if all it said was that Reuben Thomas was seen leaving the area of the house. I think it would still add to the probable cause, but it would not be as helpful as it would be without the observation of him leaving and looking at all these other things. What does that do potentially for people, you know, who are living, you know, in high crime areas? If there are drug dealers seen in the area, would that permit police to just sort of go into random homes if drug dealers in the area where they have, where they might believe that something is going on because it's a high crime area? I mean, do you, do they forfeit some Fourth Amendment protection? Absolutely not, Judge Donald. And I think it's important, it's an important and valid concern that it certainly would not be enough if all that was in this affidavit alone was that Reuben Thomas was seen in the area of this house and then was stopped with 20 grams of heroin in his car. We are not even remotely contending that that alone would be enough to establish probable cause. But then what else is there that isn't stale or the fact that Christian had in the past been more than four years ago convicted of a drug crime? So there are several things, several facts in the affidavit that we think are salient to the probable cause inquiry. First, I'd just like to clarify our position on the Reuben Thomas information because I've been talking about it as though the affidavit only says that Reuben Thomas was in the area. But in fact, it later says that when Thomas is stopped, that he denies having been at 618 Granville. And that was contrary to the observations of the law enforcement officers. So in our view, the only way to read that affidavit in a common sense, non-technical manner that the Supreme Court has instructed us to do is to give effect to that language. And the only really real way to read that is that he was being untruthful and that in fact, he had been at 618 Granville. Now, that does not put him inside the house. We concede that the language itself doesn't establish that he was inside the house, but it does establish that he was at the premises of 618 Granville, whether he was seen in the driveway, on the porch, in the yard. We don't know from the four corners of the affidavit, of course. Can I ask you a question about just this ambiguity point? So in your brief, you say that ambiguity is given the great deference given to the magistrate judge's decision. Ambiguity should be resolved in favor of the government. And that made some intuitive sense to me, but then I thought about the hypothetical. What if there is fact A versus fact B and it's ambiguous, which is right. And it turns out by looking outside the affidavit, fact B, which is more helpful to the government is in fact untrue. Under your view, would we have to interpret this ambiguity in the affidavit in the untrue way? Because we're stuck with looking at only at the four corners of the affidavit, we can't actually look to any outside information. That's an interesting point. And of course, if we can look outside the affidavit, then that makes the whole inquiry a little bit easier. Under Leon, that's correct, if we follow those other circuits. But it was puzzling to me that it seems strange to ever say that we would resolve an ambiguity in favor of the government if we know that that ambiguity in retrospect is actually mistaken, or the favorable way is actually untrue. I don't know what would happen in that instance. Certainly, if we knew that something was not true, in hindsight, I don't know that we would press a court to read the affidavit in a manner that was favorable to the government. But what we do know is that because of the great deference that is owed to the magistrate, where the magistrate has made a determination based on what is in front of him or her, that if there is an inference that can reasonably be drawn from the factual context, that courts are supposed to indulge it. And that's really what giving great deference to the magistrate's determination means. But, you know, couldn't the police officers clearly have done more here? If they started surveilling Christian's house, why didn't they do it until they saw someone for sure come in and out? Or why didn't they do another controlled by like they did eight months before? Well, it is always the case, Judge Gilman, that the police can do more than what they have done, and so that, however... The question is, though, did they do enough here? That is the question, and the affidavit has to be judged by the facts that it contains, and we agree with that. But by the same token, it is not to be judged by the facts that it doesn't contain. It is always the case that police can do more. There's a lot that informs investigative decisions. You know what would bother me? That we have a case called United States v. McLean, which was a 2005 decision where they upheld a lee on good faith exception because the court noted that, quote, there was indeed nothing more that the officer could have or should have done under these circumstances to be sure that the search would be legal. Well, here there is more they could and should have done to make sure their search would be legal. I mean, in other words, if the whole idea of the exclusionary rule is to provide deterrence for police not doing enough to protect Fourth Amendment rights, in an instance where they could easily have done more, shouldn't we, in fact, deter the police doing an incomplete job? Here they started, it sounds to me like they jumped the gun. If they had continued the surveillance, sent in a controlled by situation or just observed enough people come and go, we wouldn't be here today. You agree with that, I assume? Well, I do agree that there's always more that can be done. However, I think there was ample probable cause established in this affidavit and there certainly was good faith reliance here by the officers. A lot of stale stuff. I mean, we can't go barging in past experience, can we? Of course not. There has to be some current nexus, right? That drugs are probably going to be found in the house currently. Of course. The ultimate test or question for probable cause is whether there's a fair probability that evidence of a crime will be in the location at the time it's searched. So staleness obviously has to be considered. But that takes us back to the question that I asked, which I haven't heard the answer to. You said that even without Thomas's information, that there was probable cause established in the affidavit. And I said what exactly other than to tie into Judge Gilman's questions, the stale information and the fact that Christian had been convicted about four years earlier of a drug crime. So it sounds like if someone has a record in the drug business and eight months earlier there was an incident, that's enough. What else is there in the affidavit that you would point to to establish probable cause apart from Thomas? In the affidavit, there is information that 2009 there's a drug raid at the house. In 2011 there's a drug raid at the house. There are drug-related arrests and convictions. And this is 2015? Absolutely. But I will get to that in a second in terms of how I think the staleness analysis should be conducted, Judge Moore. Because I think that some of the court's decisions have suggested that staleness is to be considered on a fact-by-fact basis. And in our view, that is not the correct analytical framework that to be consonant with the totality of the circumstances approach that the Supreme Court has said repeatedly must be used. Staleness should be evaluated in a more holistic way based on all of the information that's in the affidavit. So we have 2009, 2011, the raids at that house. And then we have, of course, the four prior drug convictions, most two recent ones being drug In December of 2014, there is information from a reliable informant that he is back in business again and he is dealing drugs from that same location. At the end of 2014? December of 2014. What is it in that allegation that includes any facts? The statement in that allegation is that there are credible and reliable informants, that there are several drug traffickers, including Tyrone Christian. That's the only mention. What factual allegations are in that paragraph that address themselves to Mr. Christian? The factual allegation really is the one, Judge Trance, that you just read that several drug traffickers, he knows about several drug traffickers and one of them is Tyrone Christian. And that is... I'm struggling with... All right, that's a conclusion of this unnamed individual. What factual statements are included in that that point to his home? You are correct, Judge Trance, there is not information in that particular paragraph that talks about the tip in December of 2014 that is tied to Mr. Christian's home. It does say that he's known by this person to be a drug trafficker and then it says later in the affidavit that he is still living at that same house, the same house where the previous drug raids have occurred. And then, of course, we know that a month later in January of 2015, he is selling drugs at that house to a confidential informant. So again, our view is that all of this certainly true. Isn't the question not just that it has occurred across time? Because that would be true of someone who has a record, someone who has been to jail for drugs. The question is staleness. And the staleness doctrine relates to whether the person who has sold, say, this drug to his acquaintances versus a drug dealer with large-scale organized drug trafficking. I don't think you get to the inference without that latter proof. And I'm not seeing either in the 12-14, in the 19, 13, 6, and 4-year-old drug convictions, or even the last debriefing of subjects that does not even attest to their credibility or their reliability. I'm not seeing what it was that takes you over into the organized, continuous drug trafficking. Can you point that out to me? Yes. In our view, there is first one factor is that drug trafficking is occurring at the same location at regular intervals over time. That's just one factor, but it is one factor to consider. Then we have the people who are debriefed in the May-August time frame buying, quote, large quantities of cocaine and heroin from the defendant at his house, that same house again. What factual information is included in that very generic briefing, several debriefs of subjects who have stated that Tyrone Christian is a large-scale drug dealer? A conclusion, no question, their statement. What in that tells you information about the home that would indicate that the nexus is there and that something subject to an appropriate search for which you are looking will be at that home? Because the affidavit states that these people have personally purchased large quantities of heroin and crack cocaine from Christian at 618 Granville Avenue in the last four to five months. Those are facts. They're related by people who are not particularly described. That is true, but there is more than one person. In fact, there is at least three or more people one can infer from the use of the word several. They don't give a lot of credence to unnamed, unverified informants like that, do they? Without some police corroboration of something much closer to the time of the search. It is certainly true that if the only information that is included in an affidavit is information from an unnamed source, that that's going to be given some scrutiny. But here, of course, it is not the only information. But if you're just looking at that piece of information alone, then we do know, one, there's more than one saying the same thing. Two, they don't just relay rumor. They're saying that they have personally bought large quantities of these drugs from Mr. Christian at his home. They don't in any way give any information about when those purchases, those buys occurred. For example, they don't say that on November the 14th they did this. It's just a generalized statement. That's correct. We know that they say that they've done it within the last four to five month time frame, so we have that information. If it had been four months before, would that be stale? No, and again, I didn't actually, I'm running out of my... What do you have to tell me that tells you four months is okay to be not stale? So, I'm running a bit short on time here, but I did want to actually address staleness in my view. You're not answering. So, in our view, the staleness question should be a more holistic inquiry, and of course, the sort of four-factor test that this court and many other courts has articulated for evaluating staleness comes from this case, Anderson v. State. It's a Maryland State case, and it's a great case that really describes how staleness is to be conducted. Supreme Court hasn't talked a lot about staleness directly, but in Segarro v. United States, it's a 1932 Prohibition-era case. The court said it has to be considered based on the specific circumstances of the case, and Anderson v. State applies that principle and says you really have to look at everything together holistically. What might be stale, if that's the only piece of information, might not be stale if it's considered in tandem with all of the other circumstances that are presented in the affidavit. I'm still struggling with this organized and continuous drug trafficking, and I understand your analogy. It is across time. It's across a long time. But the question that relates to that is often cited in these allegations by giving factual information that would suggest you have a drug trafficker. I went into the home. I bought a large quantity of heroin. There were stacks of money on the table. I saw equipment to cut drugs. I saw baggies. All of the type of things that would indicate someone who is in the business, as opposed to someone who is making occasional sales to individuals he or she knows, making a little money on the side. In order to get you into the arena that I think you need to be in with this affidavit, I'm struggling to see anything in it that would give you purchase on the large-scale, continuous drug trafficking. Can you give me your best? What out of this is the best thing that tells you this is large-scale, continuous drug trafficking? I'm hesitant to list one thing because I do think it's important for the totality of the circumstances analysis that all of the information be considered to include the regular trafficking that's occurring over time, several purchasers in the recent four to five month time frame that say they're buying large quantities. The fact that Thomas is leaving the house and he's got 20 grams of heroin, which is not a small amount of heroin, that is a relatively large amount. Does the affidavit say that he had 20 grams when he left the house, or does the affidavit say he left the house, or do we even know if we're on the good faith considerations? He left the house, he went three other places, they ultimately stopped him and they found it in the backseat. It does say that surveillance followed him from the house and then he was stopped, and it's true that 20 grams of heroin is found in his car. That is one factor taken together with all of the other facts that are set forth in the affidavit that we contend establishes probable cause to believe that there was evidence of drug trafficking to be found at that house. Thank you, Ms. McManus. We appreciate your argument. May it please the court. Your Honors, we're here on bonk. In reading all the cases, the dissents, it seems like there may be a concern with line drawing. Are we expanding Leon too far? And I'm here to say that the answer is no. Holding in our favor today would not be a limit of Leon or an expansion of the exclusionary rule. In United States v. White, Judge Griffin indicated that there must be daylight between the probable cause standard and the Leon good faith standard. And if you decide today that there was no minimal nexus, there would still be that daylight. This case is most like the Brown case, Helton, McPherson, Lawton, Weaver, Hyphen, Leak, Buffer, Tucker. Those last two were unpublished where this court has previously declined to find the Leon good faith exception because of the text of the affidavit does not contain the nexus. It does not contain the particularized facts. It does not contain timely information. There's also a substance issue. Was there enough police investigation that went on? And that is something this court has looked at in other cases. The Weaver case is one example where the affidavit stated that the informant saw a large quantity of marijuana in the home that was there solely for the purpose of being sold. But the court looked beyond the affidavit for Leon and found this is a case where the informant didn't actually have that information and more police work was needed. Don't you run headlong into Judge Riedler's problem? So it sounds like you want the police to have done more, which would require more investigation, which might take some time. And at some point, if they do a too thorough investigation, then anything from the start of their investigation will be stale. No, Your Honor. What I'm just wondering how you think the police ought to balance those two concerns, the legitimate concerns about staleness and the need to not have all of their investigations go bad because they do too much. Yes, Your Honor. I think the answer here is, you know, there could have been a little bit more activity on Mr. Christian, particularly after the drug buy in January of 2014. That would have been the time to train the police officers on 618 Grandview on Mr. Christian and then get inside his home. But for whatever reason, they waited and then they were focused on Thomas and they have a staleness. They have a staleness issue because of that. In a number of the cases that you just recited, aren't the fact scenarios there that there was this long history, but it is brought out of the staleness arena because at the end, before the search warrant is issued and before the affidavit is created, there is a close in time new buy, new sales, or factually based allegation of someone purchasing who is perhaps a reliable, in some cases it's a reliable known person, in other cases it's a controlled buy. But all of those overcome, or many of those cases, overcome the staleness issue by in fact completing the investigation toward the end of the time frame. Is that correct? Yes, Your Honor, that is correct. That describes the situation in Frazier where this court did find that the Leon Goodfaith exception would apply. There was stale previous drug buys. There wasn't a lot of information connecting the defendant to his new home. He had been evicted. But there were police observations of him driving in the neighborhood in an expensive car. There was an informant who said he was dealing drugs in a neighboring town. And then there was another piece of information as well that corroborated that he had numerous phone calls with other known drug dealers. That was obtained after he had moved out of his old house. And so this amount of police work refreshed the stale information. And here we don't have a refreshment of the stale information. I don't think you can use Thomas, an unidentified third party, no relationship to Christian, to refresh the information concerning Christian from several years ago. Your Honors, I think the policy of Leon is not to punish the police officers for a mistake that the judge made. And here I'm going back to information that can cut both ways. The officer testified that he saw Mr. Thomas, you know, enter and exit the building. But other information was not included in this affidavit. The officers were a quarter of a mile to half a mile away in conducting their surveillance. That's on page 1129 of the record. That's four to eight football fields away. That was not included in the affidavit. There were the other stops that Mr. Thomas made that day in that four hours of surveillance. There was observation of Mr. Thomas taking a bag out of a grocery store that day. That did not make it into the affidavit. There were there was the fact that when he was finally arrested, it was 12 miles away from 618 Granville after he had stopped at a gas station. The police knew enough to put information in the affidavit, you know, that he was seen in the area. But they didn't give the magistrate a full picture of the facts to determine if there was a substantial basis to find probable cause. So this is an example of the police acting negligently. The magistrate is not didn't have the full facts. In addition, if there is a minimal nexus bound under the facts of this case that would open up homes in a wide swath of neighborhoods, high crime neighborhoods, homes that have a history of drug dealing, criminal history. And based on the suspicious activity of a third person bound with drugs that would authorize the police to go into these homes. These standards are here to protect homeowners and home occupants. But to a certain extent, they're here to protect the police as well. If we have too many home searches, that could lead to more, you know, Section 1983 litigations. The Fourth Amendment does not want more unauthorized home searches. And I think that we'd be setting the bar too low if we find a minimal nexus here. Thank you, Your Honor. Thank you, Ms. Jewell. Certainly appreciate your argument. The court would like to thank both counsel today for your arguments. And, Ms. Jewell, I understand you have taken this case under the Criminal Justice Act. Certainly what my sheet here says. And we'd like to thank you for what is truly a public service, service to Mr. Christian. And we very much appreciate it. The case will be submitted. And you may adjourn court. This honorable court is now adjourned.